IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


LORAN D. MOORE                                                          PLAINTIFF

         v.                          CIVIL NO. 5:16-CV-5324

NANCY A. BERRYHILL, [1] Acting Commissioner,
Social Security Administration                               DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Loran D. Moore, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.       **Procedural Background:**

Plaintiff protectively filed his current application for DIB on August 6, 2013, alleging

an inability to work since June 27, 2013, due to Irritable Bowel Syndrome, Obsessive

Compulsive Disorder, Generalized Anxiety Disorder, panic attacks, depression, high blood

pressure, and anxiety attacks.  (Tr. 71-72, 85-86).  For DIB purposes, Plaintiff maintained

insured status through December 31, 2016.  (Tr. 71, 85).  An administrative hearing was held

on October 7, 2014, at which Plaintiff appeared with counsel and testified.  (Tr. 30-69).  Debra

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

Steele, Vocational Expert (VE), and David Duane Gosvener, Plaintiff's friend, also testified. (Tr. 57-65).

In a written opinion dated September 19, 2015, the ALJ found that the Plaintiff had the following severe impairments: depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; antisocial personality disorder; and obsessive compulsive disorder. (Tr. 13-14). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 15-16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the following non-exertional limitations: Plaintiff is limited to work involving simple, routine, repetitive tasks, incidental interpersonal contact with coworkers and supervisors, no contact with the general public, and simple, direct and concrete supervision. (Tr. 16-20). With the help of VE testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work as a shipping order clerk and a shipping and receiving supervisor. (Tr. 20). However, based on the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of work as a poultry hanger, a sweeper cleaner, and a floor worker. The VE further testified that Plaintiff would be able to perform the job duties of a gluer, a bottle line attendant, and a sausage inspector. (Tr. 21). Ultimately, the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act from June 27, 2013, through the date of the decision. (Tr. 22).

Subsequently, on October 24, 2015, Plaintiff requested a review of the hearing decision by the Appeals Council. (Tr. 7). His request was denied on September 7, 2016. (Tr. 1-5).

2

Plaintiff filed a Petition for Judicial Review of the matter on November 10, 2016.  (Doc. 1).
Both parties have submitted briefs, and this case is before the undersigned for report and
recommendation.  (Docs. 11, 12).

The Court has reviewed the transcript in its entirety.  The complete set of facts and
arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Evidence Submitted:

At the hearing before the ALJ on October 7, 2014, Plaintiff testified that he was born
in 1961 and had obtained his GED.  (Tr. 35-36). Plaintiff's past relevant work consists of work
as a shipping order clerk and a shipping and receiving supervisor.  (Tr. 62).

Prior to the relevant time period, Plaintiff underwent a DOT medical examination, was
treated for dehydration at Northwest Medical Center in Springdale, was treated for a motor
vehicle accident at the Northwest Medical Center Emergency Room, and was treated for
anxiety and hypertension at the Ear, Nose and Throat Center of the Ozarks.  (Tr. 286-288, 290-
293, 302-305, 315-322).

Medical evidence during the relevant time period reflects that on October 18, 2013,
Plaintiff underwent a CT examination of his head and an x-ray of his chest, both of which
yielded normal results.  (Tr. 346-347).

On November 22, 2013, Dr. Robert Karas performed a General Physical Examination,
wherein he noted Plaintiff's complaints of irritable bowel syndrome, obsessive compulsive
disorder, generalized anxiety disorder, depression, and hypertension. (Tr. 326-327). Dr. Karas
also noted Plaintiff's report of headaches, acid reflux, back and knee pain, and a history of

psychiatric treatment in 2005. Dr. Karas' physical examination of the Plaintiff yielded normal results, except for the inability to flex Plaintiff's middle, left finger and poor balance. (Tr. 329-330). Dr. Karas' mental examination showed that Plaintiff was alert and oriented with no evidence of psychosis, but showed evidence of obsessive compulsive disorder and anxiety. (Tr. 332). Dr. Karas listed diagnoses of irritable bowel syndrome, generalized anxiety disorder, panic attacks, depression, and hypertension, and opined that no limitations were placed on Plaintiff based upon the findings in the examination. (Tr. 332).

On November 26, 2013, a Mental Diagnostic Examination was performed by examining physician, Dr. Mary J. Sonntag, Psy.D. Dr. Sonntag's records revealed Plaintiff's complaints of panic attacks, anxiety, depression, and an inability to sleep more than three to four hours per night. (Tr. 335). Plaintiff reported that he participated in counseling in the Psychology Department at the University of Arkansas, where he was given techniques to battle anxiety and depression. (Tr. 335). Plaintiff shared that he saw improvement after his counseling at the University. (Tr. 335). Plaintiff also reported that finances were an obstacle to treatment. Plaintiff shared that he did not need assistance with activities of daily living, that he served a three-year jail sentence for a theft of property conviction, that he did not have trouble getting along with others and that he quit his last job due to anxiety attacks, which occurred several times a day. (Tr. 336). During Plaintiff's mental examination, Plaintiff was noted to have average hygiene, no trouble walking, a good and cooperative attitude, anxious behavior, logical speech, and no evidence of delusions or bizarre obsessions. (Tr. 337). Plaintiff admitted suicidal thoughts, but denied any suicide attempts. (Tr. 337). Based on her observations, Dr. Sonntag diagnosed Plaintiff with anxiety disorder, depressive disorder, antisocial personality disorder, and a GAF score of 58-60. (Tr. 338). Dr. Sonntag also noted

4

that Plaintiff could drive familiar and unfamiliar routes, could handle his finances, was capable of performing activities of daily living independently, and could participate in social events such as church. (Tr. 338). Dr. Sonntag also opined that Plaintiff communicated and interacted within normal limits, spoke intelligibly and effectively, attended and sustained concentration, persisted on tasks of evaluation, had no problems with testing, was cooperative, gave great effort, and showed no symptoms of exaggeration or malingering. (Tr. 339).

On November 29, 2013, Dr. Martha Lancaster completed a Case Analysis, where she determined that the medical records would support a rating of non-severe. (Tr. 76-77).

On December 12, 2013, Plaintiff presented at the Ear, Nose and Throat Center of the Ozarks where he was examined by Carolyn Nutter, a physician assistant-certified. (Tr. 343). At that visit, Plaintiff complained of anxiety and high blood pressure. Ms. Nutter's notes indicated that Plaintiff's symptoms for both anxiety and high blood pressure were mild. (Tr. 343). Plaintiff was instructed to continue with the prescribed diet, exercise and medication for his high blood pressure and to continue with the prescribed medication for his depression. (Tr. 345).

On January 7, 2014, Dr. Jay Rankin performed a Psychiatric Review Technique, where he opined that Plaintiff had mild restriction of his activities of daily living; Plaintiff had moderate difficulty in maintaining social function; Plaintiff had mild difficulty in maintaining concentration, persistence, or pace; and Plaintiff had no episodes of decompensation. (Tr. 78). In Dr. Rankin's Mental RFC, he concluded that, based on Plaintiff's medical record, he had the capacity for work where interpersonal contact is routine but superficial, e.g., grocery

checker; complexity of task is learned by experience, several variables, judgment within limits; and supervision is little for routine but detailed for non-routine. (Tr. 80).

On February 13, 2014, Dr. Abesie Kelly, Ph.D. performed a Psychiatric Review Technique, where she opined that Plaintiff had mild restriction of his activities of daily living; Plaintiff had moderate difficulty in maintaining social function; Plaintiff had mild difficulty in maintaining concentration, persistence, or pace; and Plaintiff had no episodes of decompensation. (Tr. 92). Dr. Abesie also performed a Mental RFC, where she concluded that, based on Plaintiff's medical record, he had the capacity for work where interpersonal contact is routine but superficial, e.g., grocery checker; complexity of task is learned by experience, several variables, judgment within limits; and supervision is little for routine but detailed for non-routine. (Tr. 95).

On February 14, 2014, Dr. Lucy Sauer reviewed the information in Plaintiff's file and determined that the decision of Dr. Martha Lancaster should be affirmed. (Tr. 91-92).

On March 25, 2014, Plaintiff was seen by Ms. Nutter for medication refills and complaints of arthritis and hypertension. (Tr. 380). Plaintiff's physical examination was normal, and he was given refills and instructed to continue his diet, exercise and medications for his high blood pressure. (Tr. 381).

On May 27, 2014, Plaintiff returned to Ms. Nutter at the Ear, Nose and Throat Center with complaints of hypertension, anxiety and allergic rhinitis. (Tr. 377). Plaintiff's symptoms were noted as "mild," his physical examination was normal, and he was assessed with high blood pressure, depression, fatigue, allergic rhinitis, and anxiety. (Tr. 378).

On June 24, 2014, Plaintiff presented at the Ear, Nose and Throat Center with complaints of hypertension, depression, fatigue, and anxiety. (Tr. 372). Plaintiff's physical examination was normal and his symptoms were noted as mild. (Tr. 372-373). Ms. Nutter assessed Plaintiff with high blood pressure, restless leg syndrome, depression, fatigue, and anxiety. (Tr. 373).

On April 27, 2015, Plaintiff was seen by Ms. Nutter for complaints of mild back pain. (Tr. 369). Plaintiff also had secondary complaints of hypertension, restless leg syndrome, depression, and fatigue. (Tr. 369). Plaintiff's physical examination was normal. Ms. Nutter recommended that Plaintiff continue with prescribed medications and adjusted Plaintiff's medication for his depression. (Tr. 371).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent

positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. <u>Young v. Apfel</u>, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>see also</u> 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. <u>See</u> 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. <u>See</u> <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982), <u>abrogated on other grounds by Higgins v. Apfel</u>, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.    Discussion:**

Plaintiff makes the following arguments on appeal: 1) the ALJ erred in failing to fully develop the record; 2) the ALJ erred in his credibility determination; and 3) the ALJ erred in his RFC determination.  (Doc. 11, pp. 2-8).

**A.    Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2017. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of June 27, 2013, his amended alleged onset date of disability, through September 19, 2015, the date of the ALJ's opinion.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status, he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

**B.    Failure to Fully Develop the Record:**

Plaintiff alleges that the ALJ failed to fully and fairly develop the record in that the consultative mental examination by Dr. Mary Sonntag did not contain a "mental RFCA form"

and did not include an evaluation of Plaintiff's adaptive functioning ability for work-related purposes.  (Doc. 11, pp. 2-6).

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001).  However, the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record. Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)). The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.  Johnson v. Astrue, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

As for Plaintiff's assertion that the consultative mental examination by Dr. Mary Sonntag did not contain a "mental RFCA form" and did not include an evaluation of Plaintiff's adaptive functioning ability for work-related purposes, this argument is without merit.  It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. Pearsall v. Massanari, 274 F.3d 1211, 1217–18 (8th Cir. 2001) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995)).  The Court finds that there was substantial evidence in the medical record from which the ALJ could make an RFC determination, including a General Physical Examination by Dr. Karas where he considered

Plaintiff's mental impairments and diagnosed him with obsessive compulsive disorder, generalized anxiety disorder, panic attacks and depression. The medical record also contained a Mental Diagnostic Evaluation by Dr. Mary J. Sonntag, Psy.D, where Plaintiff was noted to have average hygiene, no trouble walking, a good and cooperative attitude, anxious behavior, logical speech, and no evidence of delusions or bizarre obsessions. (Tr. 337). Plaintiff was diagnosed with anxiety disorder, depressive disorder, antisocial personality disorder, and given a GAF score of 58-60; however, Dr. Sonntag also noted the following: that Plaintiff could drive familiar and unfamiliar routes, could handle his finances, was capable of performing activities of daily living independently, and could participate in social events such as church. (Tr. 338). Dr. Sonntag also found that Plaintiff communicated and interacted within normal limits, spoke intelligibly and effectively, attended and sustained concentration, persisted on tasks of evaluation, had no problems with testing, was cooperative, gave great effort, and showed no symptoms of exaggeration or malingering. (Tr. 339). The medical record also contained a case analysis by non-examining medical consultants wherein both consultants concluded that the medical record supported a rating of not severe. (Tr. 76-77, 91-92). Further, the medical record contained psychiatric review techniques and mental RFC assessments by non-examining medical consultants, both of whom determined that the medical record supported Plaintiff's capacity for work where interpersonal contact is routine but superficial, e.g., grocery checker; complexity of task is learned by experience, several variables, judgment within limits; supervision is little for routine but detailed for non-routine. (Tr. 80, 95). Moreover, Plaintiff's Function Report revealed that he had no problems with personal care, could prepare his own meals, could drive, could go out alone, could shop in stores for food, could handle his finances,

11

could spend time with others, could attend church regularly, could get along with others, could follow written and spoken instructions, and could finish what he started. (Tr. 230-237).

After reviewing the entire record, the Court finds that the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### C.    Subjective Complaints and Credibility Analysis:

Plaintiff alleges that the ALJ erred in his credibility determination in that he erroneously discounted the testimony of Plaintiff's former employer and Plaintiff's wife, and that he erroneously considered Plaintiff's activities of daily living. (Doc. 11, pp. 6-8).

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, as well as the testimony provided by Plaintiff's former employer and his wife, including the Polaski factors. In addressing Plaintiff's credibility, the ALJ noted Plaintiff's claims that he was unable to work in certain conditions,

such as high heat or full sun, and that stress triggered panic attacks. (Tr. 231). However, the ALJ also noted that despite Plaintiff's claims, he reported being able to do research on the internet, drive his wife to and from work, go to the post office, teach Bible study classes, and play in a band. (Tr. 17, 230-231). He also stated in a function report that he had no problems caring for his personal needs, cooking simple meals, doing light household chores, mowing the lawn for several house a week, going out alone, shopping in stores for food, and handling his finances. (Tr. 231-237). Plaintiff reported that he attended church regularly, had no trouble getting along with others, could finish what he started, and could follow written and spoken instructions. (Tr. 234-235).

Plaintiff's friend and former employer, David Gosvener, testified that he hired Plaintiff out of sympathy and ultimately terminated Plaintiff's employment due to excessive absences. (Tr. 58-60).

Plaintiff's wife also submitted a letter and a Third Party Function Report. In her letter, she explained that Plaintiff's panic attacks resulted in him being unable to hold down a job and missing family events. (Tr. 269). As a result, Plaintiff would not travel far from home, and he felt worthless in that he could not provide for her. (Tr. 269). Her statements in a Third Party Function Report mirrored those of Plaintiff where she claimed that Plaintiff had no problems with personal care, could prepared simple meals, could mow the yard, could do small household repairs, could drive a car, could go out alone, could shop in stores for food once a week, could handle his finances, could work on a computer, could follow written and spoken instructions well, could pay attention for twenty minutes, could finish what he started, and could get along well with others. (Tr. 210-219).

With respect to the third party testimony and statements by Mr. Gosvener and Plaintiff's wife, the ALJ properly considered this evidence but found it unpersuasive. (Tr. 17). As it relates to Plaintiff's wife's statements, corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case. Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 1988) (citing Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988)). Here, the ALJ determined that Plaintiff's wife's statements were entitled to little weight as her statements would naturally be colored by her sympathies for the Plaintiff and her statements that Plaintiff would not travel far from home, that he could not hold down a job, that he missed family events, and that he had to leave events because of panic attacks, were inconsistent with Plaintiff's statements that he could drive a car, attend church services, teach Bible classes, and play in a band. This was a permissible finding and within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

With respect to Plaintiff's mental impairments, the record demonstrates that Plaintiff was treated conservatively with medication and benefitted from breathing exercises he learned in his counseling sessions held prior to the relevant time period. Moreover, the record demonstrated that Plaintiff's medication improved his anxiety symptoms. Impairments that can be controlled with treatment or medication are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment controllable with treatment or medication is not considered disabling).

Moreover, Plaintiff testified that his mental impairments began in 2007. However, the record demonstrates that Plaintiff continued to work from 2007 until 2011, when he was laid off by his employer, and earned at substantial gainful activity levels. Plaintiff also testified

14

that since he stopped working in June of 2013, he had done some computer programing, played musical instruments, performed some work as a DJ, and attended church three times per week. (Tr. 54). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively up on that claimant's credibility." Branson v. Astrue, 678 F. Supp. 2d 947, 960 (E.D. Mo. 2010 (citing Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001)).

Although it is clear that Plaintiff suffers some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D.    ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform a full range of work at all exertional levels, with the following non-exertional limitations:   work involving simple, routine, repetitive tasks incidental interpersonal contact with coworkers and supervisors, no contact with the general public, and simple, direct and concrete supervision, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of the non-examining medical providers.   In making the RFC determination, the ALJ specifically addressed General Physical Examination performed by Dr. Karas, where Dr. Karas' physical examination of Plaintiff yielded normal results with the exception of Plaintiff's inability to flex his left, middle finger and Plaintiff's poor balance.  (Tr. 329-332).  As a result of his findings, Dr. Karas determined that no limitations should be placed on Plaintiff.  (Tr. 332).  In his examination, Dr. Karas also considered Plaintiff's mental status.  Dr. Karas opined that Plaintiff was alert and oriented, with no evidence of psychosis, but showed signs of obsessive compulsive disorder and anxiety.   (Tr. 332).

The ALJ also considered the Mental Diagnostic Evaluation by Dr. Mary J. Sonntag, Psy.D, where Plaintiff was noted to have average hygiene, no trouble walking, a good and cooperative attitude, anxious behavior, logical speech, and no evidence of delusions or bizarre obsessions.  (Tr. 337).  Plaintiff admitted suicidal thoughts, but denied any suicide attempts.  (Tr. 337).   Dr. Sonntag diagnosed Plaintiff with anxiety disorder, depressive disorder, antisocial personality disorder, and a GAF score of 58-60; however Dr. Sonntag also noted that Plaintiff could drive familiar and unfamiliar routes, could handle his finances, was capable of performing activities of daily living independently, and could participate in social events such as church.  (Tr. 338).  Dr. Sonntag also found that Plaintiff communicated and interacted within normal limits, spoke intelligibly and effectively, attended and sustained concentration,

persisted on tasks of evaluation, had no problems with testing, was cooperative, gave great effort, and showed no symptoms of exaggeration or malingering. (Tr. 339).

The ALJ also considered Plaintiff's five visits to the Ear, Nose and Throat Center of the Ozarks, where Ms. Nutter treated him with medication for mild back pain, high blood pressure, restless leg syndrome, allergic rhinitis, depression, and anxiety. (Tr. 343-345, 369-373, 377-378, 380-381). At each visit, Plaintiff's examinations were normal. (Tr. 343-345, 369-373, 377-378, 380-381).

Furthermore, the ALJ considered the opinions of the non-examining medical consultants, Drs. Martha Lancaster and Lucy Sauer, who reviewed the medical record and found that the medical records supported a rating of not severe. (Tr. 76-77, 91-92). The ALJ also considered the opinions of non-examining medical consultants, Drs. Jay Rankin and Abesie Kelly, who determined that the medical record supported Plaintiff's capacity for work where interpersonal contact is routine but superficial; e.g., grocery checker; complexity of task is learned by experience, several variables, judgment within limits; supervision is little for routine but detailed for non-routine. (Tr. 80, 95). Nevertheless, the ALJ concluded that based on the medical record, Plaintiff was more limited mentally, which is reflected in his RFC determination. (Tr. 16).

The Court notes that Plaintiff sought very little treatment for his mental impairments. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (a claimant's subjective allegations may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications). While Plaintiff saw Ms. Nutter on five occasions with complaints of depression and anxiety, he was treated conservatively with medication. See

Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). Other than Plaintiff's visits to Ms. Nutter, there is nothing in the record to indicate that Plaintiff received in-patient treatment or counseling during the relevant time period for his mental conditions. Despite Ms. Nutter's clinic notes just prior to the relevant time period that a counseling appointment for Plaintiff had been scheduled at Ozark Guidance Center for the first week of March 2013, the record fails to show Plaintiff attended counseling sessions. (Tr. 288). In his testimony, Plaintiff claimed that he was not aware of the counseling appointment set up by Ms. Nutter, and admitted to having not followed up on the counseling appointment since that time. See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004) (citations omitted) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."). 20 C.F.R. §§ 404.1530(b), 416.930(b)). The lack of medical evidence supports the ALJ's mental RFC findings. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability).

To the extent that Plaintiff alleges an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Plaintiff's own testimony was that he received insurance benefits through he Affordable Care Act. (Tr. 67).

The record also reflects that Plaintiff was able to work for several years with these conditions. Plaintiff's reported activities of daily living also support the ALJ's determination

18

that he could perform full work with certain non-exertional limitations.  Specifically, Plaintiff reported that he could manage his own personal care; could prepare simple meals; could mow the lawn; could drive; could shop for one hour; could go out alone; could handle his finances; and could follow written and spoken instructions well.  (Tr. 230-237).  He further reported that his daily routine often included reading books, driving his wife to and from work, doing computer research, studying his Bible, going to the post office, and watching television. (Tr. 230).   He also stated that he spends time with other people; goes to church regularly; has no trouble getting along with others, including authority figures; and can finish what he starts. (Tr. 233-237).

Upon careful review of the record, the Court finds that there was substantial evidence to support the ALJ's RFC determination of full work with non-exertional limitations.

**E.    Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as poultry hanger, a sweeper cleaner, a floor worker, as well as light occupations such as a gluer, a bottle line attendant, and a sausage inspector.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of January, 2018.


/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE